DECISION
{¶ 1} Relator, Merna Nelson, worked for the Carroll County Sheriff's Department ("employer") as a corrections officer. In January 2001, relator brought a loaded semi-automatic handgun, with a bullet in the chamber and the safety in the "off" position, to work. She left it unsecured in a bag with her personal belongings, and claims that she did not know it was there when she did so. Upon discovering the loaded gun, she knowingly showed it off to her fellow employees. As a result of this conduct, relator was fired.
 {¶ 2} Relator suffered a workplace injury about a year before she was fired, and her workers' compensation claim was allowed. In July 2001, about six months after she was fired, relator sought additional workers' compensation from her former employer, claiming that she suffered temporary total disability as a result of her workplace injury.
 {¶ 3} The Bureau of Workers' Compensation initially allowed relator's post-firing claim. Her employer appealed the decision to respondent, Industrial Commission of Ohio ("commission"), and a district hearing officer upheld the award. The district hearing officer's decision was then appealed. A staff hearing officer reversed the earlier decisions and denied relator's claim. The commission refused to hear a further appeal and ordered relator to pay back the $4,527.34 in benefits she had received. Relator then filed this original action in mandamus, asking the court to order the commission to reverse its denial of her claim and to vacate its repayment order.
 {¶ 4} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who issued a decision that included findings of fact and conclusions of law and recommended that the requested writ be denied. (Attached as Appendix A.) Relator has filed two objections to the magistrate's decision, to which the respondents have replied.
 {¶ 5} Relator argues that the magistrate impermissibly went outside the record that was before the commission, and that the magistrate incorrectly applied the standards set forth in State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401,650 N.E.2d 469. In Louisiana-Pacific, the court stated that when an employee is terminated for violating a written work rule or policy that (1) clearly defines the prohibited conduct, (2) had been previously identified by the employer as a disciplinable offense, and (3) was known or should have been known to the employee, then the termination can be characterized as "voluntary."
 {¶ 6} The standard of review in mandamus is whether "some evidence" in the record supports the commission's order. "In mandamus, this court must uphold a commission order that is based on `some evidence' in the record, regardless of whether the record includes contrary evidence that is greater in quantity and/or quality than the evidence on which the commission relied." (Emphasis sic.) State ex rel. Jeany v. Cleveland Concrete Constr. (Nov. 5, 2002), Franklin App. No. 02AP-159, 2002-Ohio-6029, citing State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376. "There is no abuse of discretion where there is `some evidence' in support" of the commission's decision. Pass, at 376.
 {¶ 7} When granting or denying workers' compensation benefits, the commission must specifically state what evidence it relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, syllabus.
 {¶ 8} The staff hearing officer's report clearly states that she based her decision "on the excerpts in [the] file from the Employment Manual from the employer, the statement from Sheriff Ralph R. Lucas dated 09/20/2001, the `Disciplinary Action' Memo dated 01/24/2001, the statement from Lt. Shane Steele, filed 11/02/2001, and the termination Memo, dated 01/29/2001 from Sheriff Ralph R. Lucas." The staff hearing officer's report explains why the law views relator's departure from employment as voluntary. She brought a loaded handgun to work, and the evidence upon which the staff hearing officer relied states that she also handled it carelessly. Her actions were contrary to her employer's written policy. She either knew or should have known that she could be disciplined for bringing a firearm to work without authorization and for handling a firearm carelessly because she acknowledged in writing that she read the policy. Id.
 {¶ 9} In her objections, relator again argues that she could not have "voluntarily" brought the loaded gun to work because she did not know that it was in her bag of personal belongings until it was accidentally discovered when the bag fell over. As the magistrate explained, even if relator did not know that the loaded gun was in her bag, her actions after discovering the loaded gun were completely voluntary. She took the loaded gun elsewhere in the jail to show it off to her co-workers, and the loaded gun was not made safe until one of her supervisors examined it and put the safety on. "[F]iring can take on a voluntary character when it is a consequence of wrongful or prohibited behavior that the claimant willingly undertook and should have expected to result in discharge." State ex rel. McCoy v. Dedicated Transport, Inc. (2002), 97 Ohio St.3d 25, 27, 2002-Ohio-5305.
 {¶ 10} Relator acknowledges that the employer's policy states that employees "shall not use or handle a firearm in a careless or imprudent manner," but argues that the words "careless" and "imprudent" are "ambiguous at best." There is no question that relator was voluntarily showing off a loaded 9mm semi-automatic handgun to her fellow employees while the safety was not engaged. There is no reasonable scenario under which her actions after discovering the loaded gun in her belongings could not be classified as both careless and imprudent, under any definition that might apply. Relator need not have actually anticipated that she could be fired for her actions in order for her termination to be considered as voluntary, since she clearly should have known that her actions with a loaded gun were extremely dangerous to herself and to others. McCoy, supra.
 {¶ 11} Contrary to relator's argument, the magistrate confined his analysis to the evidence upon which the staff hearing officer relied. Indeed, the Disciplinary Action memorandum expressly refers to relator's "careless actions, not only in bringing the firearm to the Sheriff's Office, but the careless handling of same; you jeopardized the safety and well-being of all the people that were in the building during your shift." The magistrate reviewed the evidence upon which the staff hearing officer relied and determined that she correctly applied the standard set forth in Louisiana-Pacific to that evidence when she determined that relator's termination is considered to be voluntary.
 {¶ 12} This court must uphold the commission's decision if there is "some evidence" in the record to support it. In this case, there is far more than "some evidence" to support its decision.
 {¶ 13} Having made an independent review pursuant to Civ.R. 53, we find that the magistrate has determined the pertinent facts and correctly applied the relevant legal standards. Accordingly, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law it contains. As the magistrate recommended, we deny the requested writ of mandamus.
Objections overruled; writ denied.
LAZARUS and WATSON, JJ., concur.
 DECISION IN MANDAMUS {¶ 14} In this original action, relator, Merna Nelson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation beginning July 24, 2001, on grounds that she voluntarily abandoned her employment, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 15} 1. On January 29, 2000, relator sustained an industrial injury while employed as a corrections officer for the Carroll County Sheriff's Office located at Carrolton, Ohio. The industrial claim is allowed for: "contusion of right shoulder region; contusion of right wrist; contusion of right hand; contusion right forehead; contusion of right knee; impingement syndrome, right; tendonitis, right shoulder," and is assigned claim number 00-315600.
 {¶ 16} 2. On July 30, 2001, relator's attending physician, P.L. Soni, M.D., completed a C-84 certifying TTD from July 24, 2001 to an estimated return-to-work date of September 10, 2001. Dr. Soni's office notes indicate that relator underwent shoulder surgery on July 24, 2001.
 {¶ 17} 3. Dr. Soni's C-84 was filed on August 1, 2001 with the Ohio Bureau of Workers' Compensation ("bureau").
 {¶ 18} 4. Initially, the bureau issued an order awarding TTD compensation. Apparently, the employer administratively appealed the bureau's order.
 {¶ 19} 5. Following a September 6, 2001 hearing, a district hearing officer ("DHO") issued an order granting TTD compensation beginning July 24, 2001, based upon Dr. Soni's C-84 and office notes. The DHO rejected the employer's defense that relator had voluntarily abandoned her employment, explaining:
 {¶ 20} "The employer contends that the claimant was fired on 01/24/2001, and that this constitutes a voluntary abandonment of employment. In short, the claimant's testimony regarding her firing is as follows: On 01/10/2001, the claimant went to work with a bag containing items which she normally brought to work. The claimant's husband had placed a handgun into this bag without the claimant's knowledge to hide it from relatives, and had failed to remove it from the bag. The claimant placed the bag in a deputy room, and at the end of the day the bag was knocked over and the gun fell out. The claimant was not authorized to carry a handgun at work.
 {¶ 21} "The employer contends that the claimant violated a written work rule by bringing the gun to work. However, the employer has failed to produce a copy of its policy manual regarding this issue, and thus has failed to satisfy State ex rel. Louisiana Pacific Corp. v. Industrial Commission (1995), 72 Ohio St.3d 401. Even assuming that the claimant knew of the rule prohibiting bringing a gun to work (which the claimant admits) and knew the penalty could be termination (which the claimant denies), the Hearing Officer finds that the claimant testified persuasively that she did not know the gun was in the bag. Thus, the Hearing Officer finds that the claimant did not willfully violate the employer's rules, and thus her termination cannot constitute voluntary abandonment of employment." (Emphasis sic.)
 {¶ 22} 6. The employer administratively appealed the DHO's order. Following a November 2, 2001 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO's order and denies TTD compensation. The SHO's order states:
 {¶ 23} "This Hearing Officer finds that the claimant is precluded from receiving Temporary Total Compensation due to her voluntary departure from employment. The claimant brought a loaded handgun to her place of employment on 01/10/2001. As a result of said action, the claimant was terminated from employment. The termination is found to be voluntary since it was (1) clearly defined prohibited conduct, (2) had been previously identified by the employer as a disciplinable offense and (3) was known or should have been known to the claimant. State ex. rel. Louisiana-Pacific Corporation v. Industrial Commission of Ohio, (1995)72 Ohio St.3d 401.
 {¶ 24} "Therefore, Temporary Total Compensation is denied from 07/24/2001 to 09/06/2001, inclusive.
 {¶ 25} "This order is based on the excerpts in file from the Employment Manual from the employer, the statement from Sheriff Ralph R. Lucas dated 09/20/2001, the `Disciplinary Action' Memo dated 01/24/2001, the statement from Lt. Shane Steele, filed 11/02/2001, and the termination Memo, dated 01/29/2001 from Sheriff Ralph R. Lucas."
 {¶ 26} 7. The record contains pertinent portions of the "Employment Manual" referenced in the SHO's order. The manual sets forth a listing of "Group III Offenses," the violation of which can result in termination for the first offense. Offense number 5 is: "Carrying or possessing firearms, explosives or weapons in the work area without authorization or in violation of the Employer's Firearms Policy."
 {¶ 27} 8. The record contains pertinent portions of the sheriff's office code of conduct. Rule #30 is captioned "Firearms." Paragraphs A, C and D state:
 {¶ 28} "A. Members shall carry firearms in accordance with law and established departmental procedures.
 {¶ 29} "* * *
 {¶ 30} "C. At no time shall a Sheriff's employee carry or have in his/her possession an illegal or unapproved firearm, except as an item of evidence, for confiscation purposes, or for transportation to or from the Property Room or Court.
 {¶ 31} "D. Members shall not use or handle weapons in a careless or imprudent manner. Members shall use weapons in accordance with law and departmental procedures."
 {¶ 32} 9. The record contains the "Disciplinary Action" memorandum dated January 24, 2001, that is referenced in the SHO's order. The memorandum reports that relator appeared before the sheriff on January 17, 2001 for an "investigatory interview." The memorandum sets forth the grounds for termination of employment:
 {¶ 33} "* * * By bringing the weapon to the Carroll County Sheriff's Office, you violated the following rules and were apprised of same:
 {¶ 34} "Group III under the disciplinary system general order five. Carrying or possessing firearms in the work area without authorization.
 {¶ 35} "Code of Conduct # 30. Paragraph A. Members shall carry firearms in accordance to law and established departmental procedures. Paragraph C. At no time shall a Sheriff's employee carry or have in his/her possession an illegal or unproved firearm. Paragraph D. Members shall not use or handle a firearm in a careless or imprudent manner. Members shall use firearms in accordance with law and departmental procedures.
 {¶ 36} "You were told due to your careless actions, not only in bringing the firearm to the Sheriff's Office, but the careless handling of same; you jeopardized the safety and well-being of all the people that were in the building during your shift."
 {¶ 37} 10. The record contains the statement of Lt. Shane Steele referenced in the SHO's order. According to Lt. Steele:
 {¶ 38} "On 01-10-2001 near 10:00 pm I was finishing up paperwork in the radio room. Merna Nelson from Corrections came into the room. She was holding a semi auto handgun. She announced to myself[,] Deputy Leopold, and Deputy Edie that she had a gun and wanted us to see it. She said that her husband Wiley must have put it in her bag when they went on vacation. She was wounding [sic] why her bag felt so heavy. She stated she had no idea that it had been in her handbag that she kept in the deputies room. On the bottom of the coat rack. She handed it to Deputy Leopold. I asked for the weapon to try and see if it was in a safe condition. It was in the firing position with the safety off. I placed the safety on and instructed Nelson to remove it from the building. Nelson left the office and went home.
 {¶ 39} "At the time I had possession of the gun I did not check to see if it was loaded. Due to being inside the building and not being familiar with that particular weapon.
 {¶ 40} "01-11-2001 Nelson advised me when I arrived on shift that she had not brought her gun to work with her tonight."
 {¶ 41} 11. The record also contains the "Termination Memo" dated January 29, 2001, referenced in the SHO's order. The "Termination Memo" reports that relator was terminated from employment on January 24, 2001, "because of infractions of the policy, procedure, rules and regulations of the Carroll County Sheriff's Office."
 {¶ 42} 12. On December 4, 2001, another SHO mailed an order refusing relator's administrative appeal from the November 2, 2001 SHO's order.
 {¶ 43} 13. On September 13, 2002, relator, Merna Nelson, filed this mandamus action.
Conclusions of Law:
 {¶ 44} The issue is whether the commission misapplied the three-prong test set forth in State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, in determining that relator voluntarily abandoned her employment.
 {¶ 45} Finding that the commission did not misapply the test as set forth in Louisiana-Pacific, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 46} In Louisiana-Pacific, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
 {¶ 47} "In State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42, * * * we discussed the temporary total disability compensation eligibility of an incarcerated claimant. We acknowledged that imprisonment would not fit the traditional definition of `voluntary' since individuals, as a general rule, do not actively seek or consent to incarceration. Looking more deeply, however, we found:
 {¶ 48} "`While the prisoner's incarceration would not normally be considered a "voluntary" act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act.' Id., 34 Ohio St.3d at 44 * * *.
 {¶ 49} "Recognizing the parallels underlying incarceration and firing, we observed in State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118, 121 * * *:"
 {¶ 50} We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarcera-tion, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *'
 {¶ 51} "Examining the present facts, we find it difficult to characterize as `involuntary' a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts." Id. at 403.
 {¶ 52} Relator's argument that the commission abused it discretion has two components: (1) relator's own view of the law set forth in Louisiana-Pacific, supra, and (2) relator's characterization of the grounds for her termination.
 {¶ 53} Relator's view of Louisiana-Pacific seems to be succinctly set forth in her brief as follows:
 {¶ 54} "The Commission in the instant case incorrectly determined that Relator had voluntarily abandoned her employment by breaching a written work rule. The Commission applied the Louisian-Pacific test but it failed to consider the underlying rational behind the Court's reasoning in Louisiana-Pacific. Specifically, violation of a written rule merely creates a presumption of intentional abandonment. Whether or not a claimant's willful and voluntary actions led to her termination is the key factor in assessing the case at hand. At a minimum, the Commission was obligated to consider evidence regarding the intent and willfulness of Relator's actions." (Relator's brief at 6.)
 {¶ 55} According to relator, the commission's order is premised upon a mistake of law namely, the alleged failure to consider the underlying rationale of Louisiana-Pacific.
 {¶ 56} Relator seems to mischaracterize the grounds for her termination. Relator views the grounds for termination as being limited to her unauthorized possession of a firearm. (Relator's brief at 6.) Relator ignores the fact that she was terminated for a violation of "general order five" as well as paragraphs A, C and D of Rule #30 of the sheriff's office code of conduct.
 {¶ 57} Here, relator attempts to limit the consequences of her conduct to only those events leading up to the accidental discovery of the handgun as it fell from her handbag. Relator asserts in this regard that she did not know that the handgun was in the handbag that she carried into the sheriff's office because her husband had placed it in the handbag before they went on vacation without informing her.
 {¶ 58} As the sheriff's "Disciplinary Action" memorandum of January 24, 2001 makes clear, relator was terminated for violation of three separate paragraphs under Rule #30 of the sheriff's office code of conduct. Paragraph D provides that "members shall not use or handle weapons in a careless or imprudent manner."
 {¶ 59} The sheriff's statement of September 20, 2001, indicates that the employer's decision to terminate employment was premised in large part on the actions relator undertook after the gun fell out of relator's handbag. As the sheriff put it, "when the gun fell out of the handbag, the common sense decision would have been to place it back into the bag and leave the facility."
 {¶ 60} Instead, according to the sheriff's memorandum, relator "took the gun into the dispatch room waiving it around showing it to people in the dispatch room." According to the sheriff's memorandum, the shift lieutenant "took the gun off of Merna Nelson, and again I stress, which was loaded with a round in the chamber and the safety in the `fire' position."
 {¶ 61} Here, relator chooses to characterize her actions as follows:
 {¶ 62} "* * * Near the end of the shift a co-worker knocked the bag over, revealing the weapon. * * * Attempting to properly handle this unexpected situation, Relator immediately took the firearm to her supervisor, who instructed her to remove the weapon from the facility. * * *" (Relator's brief at 1.)
 {¶ 63} Obviously, relator's characterization of what happened after the handgun fell out of the bag differs significantly from the facts set forth in the sheriff's memorandum.
 {¶ 64} Recently, in State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, at ¶ 8, the court stated:
 {¶ 65} "In Louisiana-Pacific Corp., * * * we recognized that a justifiable discharge for misconduct can constitute a voluntary abandonment of the claimant's former position of employment so as to bar subsequent TTD compensation. We found that, although not generally consented to or initiated by the employee, firing can take on a voluntary character when it is a consequence of wrongful or prohibited behavior that the claimant willingly undertook and should have expected to result in discharge. * * *"
 {¶ 66} Even if it is conceivable, as relator seems to argue here, that a discharge meeting Louisiana-Pacific's three-prong test might not be a consequence of behavior that the claimant willingly undertook and thus may be held to be involuntary, this case does not present such a scenario.
 {¶ 67} The actions that relator undertook after the handgun fell from her handbag can be characterized as "prohibited behavior that the claimant willingly undertook and should have expected to result in discharge." McCoy, supra, at ¶ 8.
 {¶ 68} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.